**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JAMES BECKER and SASANNA STROZIER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> INLAND AMERICAN REAL ESTATE TRUST, INC., J. MICHAEL BORDEN, THOMAS F. GLAVIN, BRENDA G. GUJRAL, DAVID MAHON, THOMAS F. MEAGHER, ROBERT D. PARKS, PAULA SABAN and WILLIAM J. WIERZBICKI, <br><br> Defendants | Case No. 13-cv-3128 |

## CLASS ACTION COMPLAINT

Plaintiffs James Becker and Sasanna Strozier ("Plaintiffs"), on behalf of themselves and of all others similarly situated, by their undersigned attorneys, for their Complaint against the above-named defendants ("Defendants"), upon knowledge as to matters relating to themselves and upon information and belief as to all other matters, allege as follows:

## NATURE OF THE ACTION

1.      This is a class action on behalf of all shareholders of defendant Inland American Real Estate Trust, Inc. (further defined below and hereinafter referred to as "Inland American" or the "Company") who purchased additional shares in Inland American pursuant to the Company's Distribution Reinvestment Plan ("DRP") on or after March 30, 2009 ("Class Period").

2.      Plaintiffs and the Class purchased Inland American shares in connection with the DRP at inflated prices that did not reflect the true value of Inland American.

1

3.      During the Class Period, class members are believed to have purchased approximately $500 million or more worth of Inland American shares at inflated prices pursuant to the DRP.  During the Class Period from March 30, 2009 until September 21, 2010, Inland American charged Class members $9.50 a share for purchases pursuant to the DRP.   From approximately September 21, 2010 until December 21, 2011, the Company charged $8.03 a share for DRP purchases.  From approximately December 21, 2011 until December 19, 2012, the Company charged $7.22 a share for purchases pursuant to the DRP.   Beginning on December 19, 2012, the Company dropped the price for sales under the DRP to $6.93 a share.

4.      The foregoing prices of between $6.93 a share and $9.50 a share for transactions pursuant to the DRP were inflated and did not reflect the true value of Inland American shares.

5.      This action is brought for damages suffered due to Defendants' conscious breaches of fiduciary duties of care, loyalty and good faith by refusing to inform themselves of the correct valuation of the Company, thereby selling Company shares to the DRP participants at an inflated price for over four years.

6.      In recent months Inland American shares are believed to have traded on the secondary market at approximately $5.65-$6.00 a share.  Nevertheless, Defendants repeatedly advised Inland American shareholders to reject tender offers by third parties offering to purchase Inland American shares at prices as low as 4.00 a share and reiterated Defendants' claim that the Company's shares were worth much more.

7.      No changes in market fundamentals or Inland American's business and prospects over time explain this vast divergence between Defendants' purported valuation of Inland American shares and the price at which the market valued Inland American shares.

8.      Defendants knew that values of commercial and residential real estate such as that held in Inland American's portfolio had begun to significantly deteriorate long before Defendants began to lower the price for sales under the DRP in September 2010.

9.      The Board (as hereinafter defined), refusing to inform themselves of the value of the Company, acted in bad faith and in breach of the fiduciary duty of loyalty in pricing the Company's stock for purposes of DRP sales.

10.     Based on the foregoing, Defendants inflated the sale price for Inland American shares in deliberate disregard of their fiduciary duties to existing Inland American shareholders in a manner that enabled the Company to raise capital cheaply and profit at the expense of its own shareholders.  Plaintiffs and the Class were damaged by paying inflated prices for Inland American shares pursuant to the DRP.

11.     Plaintiffs now bring this action to recover the sums that Defendants overcharged Inland American shareholders for sales of the Company's shares pursuant to the DRP.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).   The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and this action is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant.   Defendant Inland American REIT's principal place of business is in this district.

13.     Venue is proper under 28 U.S.C. § 1391(a) and (b) and 7 U.S.C. § 25(c), because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

14 (a).    Plaintiff James Becker is a citizen of the State of Ohio.  Mr. Becker is an Inland American shareholder who participated in the company's DRP and purchased Inland American shares at inflated prices in connection with the DRP during the Class Period

(b)        Plaintiff Strozier is a citizen of the State of Georgia.  Strozier is an Inland American shareholder who participated in the company's DRP and purchased Inland American shares at inflated prices in connection with the DRP during the Class Period.  James Becker and Strozier are hereinafter jointly referred to as "Plaintiffs".

15.    Defendant Inland American is a corporation organized and existing under the laws of the State of Maryland.  It was incorporated in Maryland in 2004 and is headquartered at 2901 Butterfield Road, Oak Brook, Illinois 60523.  Inland American is a real estate company that operates for federal income tax purposes as a real estate investment trust and is a public, non-traded REIT.  As a public non-traded REIT, Inland American's shares at all relevant times were not listed on a national stock exchange, but the Company filed periodic reports with the Securities and Exchange Commission ("SEC") and was permitted to sell shares to the general investing public instead of to accredited investors only.   The Company acquires, owns, operates and develops a diversified portfolio of commercial real estate, including retail, multi-family, industrial, lodging, and office properties, located in the United States.  In addition, the Company owns assets through joint ventures in which it does not own a controlling interest, as well as properties in development.  Inland American also invests in marketable securities and other assets.   As of December 31, 2012, the Company's portfolio was comprised of 794 properties representing 45.6 million square feet of retail, office and industrial space, 5,311 multi-family units, 5,212 student housing beds and 16,345 hotel rooms.

16.     Defendant J. Michael Borden ("Borden") has served as a Director of the Company since October 2004.

17.     Thomas F. Glavin ("Glavin") has served as a Director of the Company since October 2007.

18.     Defendant Brenda G. Gujral ("Gujral") has served as President and a Director of the Company since October 2004.

19.     Defendant David Mahon ("Mahon") served  as a Director of the Company from October 2004 until his resignation effective November 15, 2010.

20.     Defendant Thomas F. Meagher ("Meagher) has served as a Director of the Company since October 2004.

21.     Defendant Robert D. Parks ("Parks") has served as Chairman of the Board and a Director of the Company since October 2004.

22.     Defendant Paula Saban ("Saban") has served as a Director of the Company since October 2004.

23.     Defendant William J. Wierzbicki ("Wierzbicki") has served as a Director of the Company since October 2005.

24.     Defendants Borden, Glavin, Gujral, Mahon, Meagher, Parks, Saban, and Wierzbicki  comprised Inland American's Board of Directors at relevant times and are hereinafter sometimes referred to collectively as the "Director Defendants."

## DEFENDANTS' DUTIES TO PLAINTIFFS AND THE CLASS

25.     The Director Defendants owed Plaintiffs and the Class (comprised of existing Inland American shareholders) the duty to exercise a high degree of due care, loyalty, good faith and candor in connection with their duties as Directors of Inland American.

26.     In particular, the Director Defendants owed Plaintiffs and the Class, as shareholders, a duty at all times to act in good faith and based on being reasonably informed of the facts relevant to their acts as directors.  Defendants also owed a duty of full disclosure of all material facts relevant to their transactions with the Company, requests by the Company for them to act, and otherwise.

27.     Whenever directors communicate publicly or directly with shareholders about the corporation's affairs, with or without a request for shareholder action, directors have a fiduciary duty to shareholders to exercise due care, good faith and loyalty. It follows that when directors communicate publicly or directly with shareholders about corporate matters, the *sine qua non* of directors' fiduciary duty to shareholders is honesty.  Shareholders are entitled to rely upon the truthfulness of all information disseminated to them by directors they elect as fiduciaries for themselves and the corporate enterprise. Providing inaccurate information in the context of a request that a shareholder engage in a transaction may be the result of violation of the fiduciary duties of care, loyalty or good faith.

28.     The Director Defendants controlled the dissemination of information to shareholders (through SEC filings, letters to shareholders, and otherwise).  The Director Defendants also controlled the prices at which Inland American sold shares to its existing shareholders pursuant to the DRP and the method by which Defendants determined the sales price.

29.     Defendants, individually and/or collectively, as alleged herein, breached their fiduciary duties to Plaintiffs and the Class by (*inter alia*) setting the price at which Inland American sold shares to existing shareholders pursuant to the DRP at an inflated level on an admittedly arbitrary basis and (prior to September 2010) without taking any steps to inform themselves as to a fair value for Inland American shares.

30.     A duty of loyalty claim may be premised upon the failure of a fiduciary to act in good faith and on a reasonably informed basis.  The fiduciary duty of loyalty is not limited to cases involving a financial or other cognizable fiduciary conflict of interest.  It also encompasses cases where the fiduciary fails to act in good faith.  Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.

31.     Fiduciaries can be held liable if they are disloyal, including if they fail to obtain information as result of their knowing abdication of their directorial duties.  A fiduciary acts in bad faith when, among other things, he takes or fails to take any action that demonstrates a faithlessness or lack of true devotion to the interests of the corporation and its shareholders.

## DEFENDANTS' BREACHES OF DUTY TO PLAINTIFFS AND THE CLASS

### *BACKGROUND, BRIEF HISTORY AND CAPITALIZATION OF INLAND AMERICAN*

32.     Defendants are in the business of selling investments in real estate investment trusts, or "REITs."  REITs are investment vehicles that use the aggregated funds of individual investors to buy and operate income-producing real estate properties and distribute the income to those investors.  In order to qualify as a REIT, the company must affirmatively elect to be taxed as a REIT and must satisfy a number of requirements.  For one, the company must distribute

90% of its net income to shareholders annually. In addition, the company must derive 75% of its gross income from investments in real property.

33. Most REIT shares are registered for trading on a national securities exchange. Publicly-traded REIT shares are widely followed by securities analysts and their share prices fluctuate with changes in the REIT's portfolio and economic conditions. Other REITs, such as Inland American are referred to as "non-traded REITs," as their shares are not registered for trading on any exchange.

34. The REIT structure offers a number of benefits, especially favorable tax treatment. More specifically, REITs do not pay taxes at the corporate level; rather, investors are taxed at their individual tax rates for the ordinary income portion of the dividend. REITs also offer investors (a) regular dividends, (b) a more liquid position as compared to purchasing real estate directly, and (c) diversification through the ability to own a variety of property types in geographically diverse areas.

35. Investors in non-traded REITs generally expect to hold their shares for a five to seven year term, with the understanding that the sponsor will seek to list the shares on a national securities exchange. Investors depend on the legitimate operation and accounting of the REIT's business and the sale of properties or listing for the return of their principal. Investors in non-traded REITs who seek to sell their shares before the term of the investment must either resell their shares to the sponsor or sell in secondary markets that provide somewhat limited liquidity and price discovery. Because non-traded REIT shares do not trade in an open market, investors depend on the disclosures made by the sponsor for information about the value of the REIT's shares.

36.     Because the Company's shares are not listed on a national exchange, the REIT is by definition an illiquid investment. But at relevant times there existed a secondary market in Inland American shares, albeit on that provided somewhat limited liquidity and price discovery.

37.     Inland American's initial offering of its shares began on August 30, 2005 and terminated as of the close of business on July 31, 2007. The Company had sold a total of 469,598,762 shares in the primary offering at prices of $10.00 a share and approximately 9,720,991 shares at $9.50 a share pursuant to the offering of shares through the DRP. A follow-on registration statement for an offering of up to 500,000,000 shares of common stock at $10.00 each and up to 40,000,000 shares at $9.50 each pursuant to the DRP was declared effective by the SEC on August 1, 2007. Through December 31, 2008, the Company had sold a total of 295,766,881 shares in the follow-on offering and 31,843,240 shares pursuant to the offering of shares through the DRP.

38.     As of December 31, 2008, Inland American had issued a total of 765,365,643 shares, which included 670,000 shares issued to the Company's sponsor and business manager primarily in respect of acquisition fees. In addition, the Company had sold 41,564,231 shares through its DRP as of December 31, 2008. The Company had raised a total of approximately $8.0 billion of gross offering proceeds as of December 31, 2008.

### INLAND AMERICAN TERMINATES ITS PUBLIC OFFERING OF SHARES AND REPURCHASE PLAN BUT CONTINUES SELLING SHARES THROUGH ITS DRP

39.     The Class Period begins on March 30, 2009. On that date the Company ceased redeeming shares from its shareholders pursuant to the Share Repurchase Plan ("SRP"). In a letter to shareholders released on February 27, 2009 the Company announced as follows:

> Our board of directors and management team continually evaluate the economic and credit environment and its impact on our business. Maintaining share value and significant capital reserves have become a priority for all companies given the limited

options available for accessing the debt and equity markets. While at this juncture we are in the enviable position of having significant cash to utilize in the execution of our strategy, it is prudent for us to continue to be in a strong cash position.

The fiduciary responsibility we have to all our stockholders to achieve our investment objectives is vital to the way Inland American is managed. Our objectives are to invest in real estate assets that produce attractive current yield and long-term risk-adjusted returns to our stockholders. We believe that the optimum use of capital at this time is to acquire higher yielding real estate assets that we are seeing as a result of the dislocation in the financial and real estate markets. Additionally, we are approaching the five percent limitation for the number of shares the company can repurchase during any consecutive twelve-calendar month period, as outlined in Section 3(e) of our Share Repurchase Program, as described in the prospectus. Consequently, our board of directors voted to suspend the Share Repurchase Program until further notice effective March 30, 2009. This letter is the 30-day written notification being provided to all stockholders pursuant to Section 7 (a) of the Share Repurchase Program.

40.     On March 30, 2009 Inland American released a letter to shareholders announcing to it would cease selling shares to new investors effective  April 6, 2009, terminating the follow-on offering that had commenced on August 1, 2007.

41.     Although the Company ceased redeeming shares at $9.50 a share pursuant to the SRP, it continued to sell shares under the DRP at what it had previously described as an arbitrary price of $9.50 a share. *See* Prospectus on Form 424(b)(3), filed with the SEC on January 7, 2009 (stating that offering price was "arbitrarily selected").

42.     The Company sold a total of 24,347,096 shares pursuant to the DRP in 2009, raising proceeds of $231 million.

### INLAND AMERICAN CONTINUES SELLING SHARES THROUGHT ITS DRP AT INFLATED PRICES WHILE RECOMMENDING ITS SHAREHOLDERS REJECT TENDER OFFERS AT FAR LOWER PRICES

43.     In February 2010 the Company disclosed that third parties were offering to acquire Inland American shares at a value far below the $9.50 a share price at which the Company was selling shares under the DRP. The Company insisted that its shares were worth far more than the third parties were offering in a letter to shareholders issued February 12, 2010:

10

We are aware that you may have received an unsolicited "mini-tender" offer being made by CMG Acquisition Co., LLC ("CMG") or REITCO LLC ("REITCO") with respect to your shares of common stock of Inland American Real Estate Trust, Inc. ("Inland American"). CMG is offering to purchase up to 2,000,000 of our shares for a price of $3.00 per share, less any distributions paid or payable to you on or after March 12, 2010. REITCO is offering to purchase up to 1,000,000 of our shares for a price of $4.10 per share, less any distributions paid after February 1, 2010 and less administrative fees of $100.00 per stockholder. **You should be aware that Inland American is not in any way affiliated with CMG or REITCO, and we believe these offers are not in your best interest as stockholders**.

Mini-tender offers are third-party offers to purchase less than 5% of an entity's outstanding securities, thereby avoiding many of the filing, disclosure and procedural requirements established by the U.S. Securities and Exchange Commission ("SEC") to protect investors from certain abuses that may occur in a tender offer. The SEC has cautioned investors about offers of this nature. Additional information about mini-tender offers is available on the SEC's website at www.sec.gov/investor/pubs/minitend.htm. Stockholders are urged to consult with their financial advisors and to exercise caution with respect to mini-tender offers.

**We have evaluated the terms of both offers and unanimously recommend that stockholders reject these offers and not tender their shares in these offers.** However, we acknowledge that each stockholder has his or her individual liquidity needs and must evaluate the offers accordingly. Some of the reasons why we strongly believe the offer is not in the best interests of our stockholders are as follows:

- we believe that the per share offer prices are less than the potential value of Inland American's shares on a going-forward basis;

\* \* \*

- although we do not intend to publish an estimated value of our shares until October 2010, we believe that the estimated value of our shares is in excess of the per share offer prices; and

[Emphasis in original].

44. Inland American did acknowledge that it expected that the "future per share estimated value" of its shares would be less than $9.50 a share, but nonetheless continued to sell shares under the DRP at $9.50 a share:

*An estimated value of our shares of common stock may not exceed the price at which we are offering shares under the distribution reinvestment plan.*

Under rules published by the Financial Industry Regulatory Authority ("FINRA"), registered broker-dealers must disclose in a customer's account statement an estimated value for a REIT's securities if the annual report of that REIT discloses a per share estimated value. The FINRA rules prohibit broker-dealers from using a per share estimated value developed from data that is more than eighteen months old. We are currently evaluating the method that we will use to assist broker-dealers with this requirement. Because of the uncertainties in the marketplace generally and the factors described herein, which could continue to impact our results of operations and financial condition, we expect that the future per share estimated value of our shares will be less than the price at which we last offered shares in a primary offering or the price of our shares currently offered through our distribution reinvestment plan.

[2009 Annual Report on Form 10-K dated March 16, 2010].

45.     On May 20, 2010, the Company again strongly recommended that shareholders reject a mini tender offer by CMG Group offering to buy Inland American shares at $4.00 a share, stating that its belief that "the CMG offer price is less than the potential value of Inland American's share [sic] on a going forward basis."

46.     On August 26, 2010 the Company announced amendments to its charter to make it more difficult for third parties to mount mini tender offers:

Effective August 24, 2010, Inland American Real Estate Trust, Inc. (referred to herein as "us," "we," "our" or the "Registrant") amended and restated our charter by filing the Sixth Articles of Amendment and Restatement (the "Sixth Articles") with the State Department of Assessments and Taxation of Maryland. The Sixth Articles were approved by our stockholders at our annual meeting of stockholders, as described in Item 5.07 below.

The amendments to our charter relate primarily to access to our stockholder list and our treatment of "mini-tender" offers.  Specifically, Section 10.1 of the Sixth Articles now permits only those stockholders who, for at least six months, have been stockholders of record of at least 5% of the outstanding stock of any class to inspect our books of account and stock ledger, to request a statement of our affairs and to request a stockholder list.  In addition, Section 10.2 of the Sixth Articles includes a new provision requiring any person making a tender offer, including any "mini-tender" offer, to comply with most of the provisions of Regulation 14D of the Securities Exchange Act of 1934, as amended, including the notice and disclosure requirements.  The new provision requires any offeror to provide us notice of the offer at least ten business days before initiating the offer.  If the offeror does not comply with these provisions, we will have the right to redeem that person's shares and any shares acquired in the offer.  In addition, the non-complying

offeror will be responsible for all of our expenses in connection with that person's noncompliance.

[Form 8-K filed with the SEC on August 2, 2010].

47.     Effective as of September 21, 2010, the Company adopted a Second Amended and Restated Distribution Reinvestment Plan.  The DRP was amended to change the price per share for shares of common stock purchased under the Plan to 100% of the "market price" of a share of the Company's common stock until the shares become listed for trading.  For these purposes, "market price" means, prior to the shares of the Company's common stock being listed for trading, the fair market value of a share of the Company's common stock, as estimated by the Company.

48.     On September 23, 2010 the Company announced that it had determined that the fair value of Inland American shares was $8.03 rather than $9.50 a share:

> On September 21, 2010, Inland American Real Estate Trust, Inc. (referred to herein as "us," "we," "our" or the "Company") established an estimated value per share of our common stock equal to $8.03.
>
> We estimated the per share value of our common stock to assist those broker-dealers that sold our common stock in our initial and follow-on "best efforts" offerings to comply with the rules published by the Financial Industry Regulatory Authority ("FINRA") and to assist fiduciaries of retirement plans subject to annual reporting requirements of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in the preparation of their reports.  Specifically, FINRA requires registered broker-dealers to disclose in a customer's account statement an estimated value for a REIT's securities if the annual report of that REIT discloses a per share estimated value. The FINRA rules prohibit broker-dealers from using a per share estimated value developed from data that is more than eighteen months old, which in effect prohibits the broker-dealers from using a per share offering price from an issuer's last "best efforts" offering for more than eighteen months after the termination of that offering.  Our last "best efforts" offering was terminated on April 6, 2009.
>
> The FINRA rules provide no guidance regarding the methodology a REIT must use to determine its estimated value per share.  As with any valuation methodology, our methodology is based upon a number of estimates and assumptions that may prove later to be inaccurate or incomplete.  Further, different parties using different assumptions and estimates could derive a different estimated value per share, which could be significantly different from our estimated value per share.  The estimated per share value established

by us represents neither the fair value according to U.S. generally accepted accounting principles (or "GAAP") of our assets less liabilities, nor the amount our shares would trade at on a national securities exchange or the amount a stockholder would obtain if he or she tried to sell his or her shares or if we liquidated our assets.

[Form 8-K filed with the SEC on September 23, 2010].

49.     In June 2011, the Company announced that another mini tender offer valuing

Inland American shares at far lower than $8.03 a share had been withdrawn after the Company

threatened to sue:

 Inland American Real Estate Trust, Inc. ("Inland American") announced today that in response to imminent litigation, Madison Liquidity Investors, LLC ("Madison") has withdrawn its unsolicited mini-tender offer to Inland American stockholders.  Madison's offer was in clear violation of Inland American's charter, which includes requirements for making a mini-tender offer.

In the past, Inland American's board of directors has strongly rejected similar unsolicited and opportunistic mini-tender offers.  Inland American believes these offers are meant to take advantage of stockholders and do not provide accurate or fair market value to shareholders.  Firms who make these offers apply a significant discount to the current value of a company's share price.  In this instance, Madison's offer was at a 43 percent discount from Inland American's current estimated valuation.

[Exh. 99.2 to Form 8-K filed with the SEC on June 14, 2011.

50.     The Company also sent a cease-and-desist letter to another party attempting to

initiate a mini tender offer for Inland American shares, Lapis Advisors, LP, in June 2011.

51.     In November 2011 the Company hinted that it might lower its estimated value for

Inland American shares:

During the next couple of months we will close our financial books for 2011, prepare our budgets for 2012 and release an estimated per share value.  The most common questions from stockholders include – What is the estimated per share value going to be? When will it be calculated? Will the new value have any effect on the Share Repurchase Program ("SRP") or distribution rate? And will the current distribution rate be sustained?

**When will the estimated per share value be calculated?** Inland American Real Estate Trust, Inc. ("Inland American") will provide the valuation in late December.

14

**What is the estimated value going to be?** We do not know at the present time; however, we believe the analysis of the estimated per share value in December may be less than the current estimated value. For the calculation, we will review best practices to determine our methodology and we will engage an independent third party to review our assumptions. Then our findings will be presented to our board of directors.

In our last letter, we discussed external macro-economic factors that have distressed the value of real estate and will influence our valuation – the poor economy, the high unemployment rate and the volatility of the stock market. Given these wildly fluctuating economic factors, it is not possible to know the exact estimated value at this time. It is important to remember a valuation is only a snap shot in time and changes as the external factors vary.

[Exh. 99.1 to Form 8-K filed with the SEC on November 14, 2011].

52.     On December 29, 2011, the Company lowered its estimate of the value of Inland American shares to $7.22 a share.

53.     In October 2012, the Company announced that yet another mini tender offer had been extended by CMG Partners, LLC, this time at the price of $4.25 a share. The Company once again emphatically recommended that shareholders reject the offer, stating that "the offer would result in the purchase of your shares by CMG at a 41% discount compared to the current estimated per share value of $7.22 as of December 27, 2011. Accepting this offer could deprive you of the potential long-term value of your investment." {Ex. 99.1 to Form 8-K filed with the SEC on October 12, 2012].

54.     On December 19, 2012, the Company further lowered its estimated value for Inland American shares to $6.93 a share, and also changed the methodology by which it valued the shares:

 To estimate our per share value, our Business Manager relied this year solely on the net asset valuation method. Our Business Manager began its analysis by estimating the value of the Company's real properties using a discounted cash flow of projected net operating income less capital expenditures for each property, for the ten-year period ending December 31, 2022. In this analysis, the Business Manager used a range of discount rates and exit capitalization rates, as described below, for similar property types and that

the Business Manager believed fell within ranges that would be used by similar investors to value the Company's real properties. The Business Manager then applied a sensitivity analysis to create a range of values and recommended a share value number within that range, based upon a variety of facts and assumptions related to, among other things, the nature of our operations, the markets in which our properties are located, and the general economic conditions in the United States. External factors relied upon by our Business Manager to recommend a share price above the mid-point of the net asset valuation range included trends showing declines in capitalization rates in retail and industrial segments, as well as the overall improving economic conditions relative to real estate. Our Business Manager tempered its share price calculation, however, based on uncertainties in the overall economy, including the fiscal cliff and current debt crisis.

To arrive at the total asset value, the Business Manager added the value of other assets and investments, such as cash, marketable securities, joint ventures and land held for developments, to the value of the real properties described above. From total asset value, the Business Manager then subtracted the total fair value of the Company's debt. This value was then divided by the number of shares outstanding as of December 1, 2012 to arrive at a per share estimated value.

[Form 8-K filed with the SEC on December 19, 2012]

### INLAND AMERICAN ANNOUNCES AN SEC INVESTIGATION INTO THE COMPANY'S BUSINESS MANAGEMENT FEES, RELATIONSHIPS WITH AFFILIATES, AND DETERMINATION OF PROPERTY VALUATIONS

55.    In November 2012 the Company announced that it had learned of an SEC

investigation into Inland American's business management frees, relationships with affiliates,

and determination of property valuations:

The Company has learned that the SEC is conducting a non-public, formal, fact-finding investigation to determine whether there have been violations of certain provisions of the federal securities laws regarding the business management fees, property management fees, transactions with affiliates, timing and amount of distributions paid to investors, determination of property impairments, and any decision regarding whether the Company might become a self-administered REIT. The Company has not been accused of any wrongdoing by the SEC. The Company also has been informed by the SEC that the existence of this investigation does not mean that the SEC has concluded that anyone has broken the law or that the SEC has a negative opinion of any person, entity, or security. The Company has been cooperating fully with the SEC.

The Company cannot reasonably estimate the timing of the investigation, nor can the Company predict whether or not the investigation might have a material adverse effect on the business.

[Form 10-Q filed with the SEC on November 9, 2012]

56.     The Company also announced that shareholders had demanded that the Board

should investigate whether to commence litigation arising out of the matters that are the subject

of the SEC investigation:

> In a letter dated September 11, 2012, three purported shareholders of the Company demanded that the Board investigate whether certain claims should be brought against the Company's Board of Directors, the Business Manager and certain entities and individuals affiliated with the Business Manager ("Business Manager Affiliates"). The letter claims that the Board, the Business Manager and the Business Manager Affiliates breached their fiduciary duties to the Company by (i) falsely reporting the value of the Company's common stock until September 2010; (ii) causing the Company to purchase shares of its common stock from stockholders at prices in excess of their value; and (iii) disguising returns of capital paid to stockholders as REIT income and thus paying the Business Manager fees to which it was not entitled.  The purported stockholders contend that legal proceedings should seek recovery of damages in an unspecified amount allegedly sustained by the Company. There has been no lawsuit filed, however, with regard to these matters.

> The full Board of Directors has responded by authorizing the independent directors to investigate the claims contained in the demand letter, as well as any other matters the independent directors see fit to investigate.  Pursuant to this authority, the independent directors have formed a special litigation committee that is comprised solely of independent directors to review and evaluate the matters referred by the full Board to the independent directors, and to recommend to the full Board any further action as is appropriate.  The special litigation committee intends to investigate these claims with the assistance of independent legal counsel and will make a recommendation to the Board of Directors after the committee has completed its investigation.  Although the claims are directed at the Board of Directors and various third parties (Business Manager and the Business Manager Affiliates) and not the Company itself, there can be no assurance that the pursuit of any such claims would not have a material adverse effect on the Company.

[Form 10-Q filed with the SEC on November 9, 2012]

57.     The Company continues to sell Inland American shares at the inflated price of

$6.93 a share to the date of this Complaint.

58.     The Company has sold a total of 22,787,584 shares in 2010, 24,855,275 shares in

2011, and 26,571,399 shares in 2012 pursuant to the DRP, in addition to the 24,347,096 shares

sold in 2009. In total, Inland American has sold over 90 million shares of Company stock at inflated prices pursuant to the DRP during the Class Period.

59.     Plaintiffs and the Class now bring this class action for breach of fiduciary duty to recover the money that Defendants have unlawfully taken from them by selling them Inland American shares inflated prices under the DRP while consciously ignoring their fiduciary duties and for damages caused by the breaches of duty under investigation by the SEC as described in Paragraph 56, *supra*.

## CLASS ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). The Class in this action ("Class") consists of all persons, other than Defendants, their employees, affiliates and agents, who have acquired or shall hereafter acquire Inland American common stock pursuant to the DRP on or after March 30, 2009.

61.     At least thousands of persons are believed to be members of the putative class ("Class"), and those persons or entities are geographically dispersed. Therefore, joinder is impracticable pursuant to FRCP Rule 23(a)(1).

62.     Common issues of fact or law predominate over individual issues within the meaning of FRCP Rule 23(a)(2). Common issues of law and fact include but are not limited to:

(i)     whether the Director Defendants breached their fiduciary duties to Plaintiffs and the Class;

(ii)    whether a constructive or actual trust should be impressed upon the ill-gotten gains obtained by Defendant Inland American as fruit of its misconduct;

(iii)  whether Inland American was unjustly enriched by selling shares of Inland American stock to Plaintiffs and the Class pursuant to the DRP at inflated prices that did not reflect such shares' true economic value;

(iv)     whether Inland American and the Director Defendants breached duties to shareholders due to their conduct currently under investigation by the SEC; and

(v)      the sum of damages and disgorgement of unjust enrichment due to Plaintiffs and the Class.

63.     Plaintiffs' interests are typical of, and not antagonistic to the interests of, the Class.

64.     Plaintiffs have retained competent counsel experienced with class actions and complex litigation and intend to vigorously prosecute this action.

65.     Common issues predominate.  A class action is superior to all other methods for the fair and efficient adjudication of this controversy.  Indeed, a class action is the only method by which Plaintiffs and the Class can efficiently seek redress and obtain a uniform adjudication of their claims.

66.     The size of individual damages is small in comparison to the complexity and scope of the Defendants' alleged unlawful conduct.  Plaintiffs do not anticipate any difficulties in the management of this action as a class action.

## CAUSES OF ACTION

## COUNT I

### (Breach of Fiduciary Duty Against the Director Defendants)

67.     Plaintiffs incorporate and re-allege each of their previous allegations as though fully set forth herein.

19

68.     The Director Defendants, by virtue of their positions with the Company, owed Plaintiffs and the Class a fiduciary duty to exercise a high degree of due care, loyalty, good faith and candor in connection with their duties as Directors of Inland American. In particular, the Director Defendants owed Plaintiffs and the Class, as shareholders, a duty at all times to act in good faith and based on being reasonably informed of the facts relevant to their acts as Directors.

69.     Defendants breached these fiduciary duties to Plaintiffs and the Class by (*inter alia*) setting the price at which Inland American sold shares to existing shareholders pursuant to the DRP at an inflated and completely arbitrary level, and without taking reasonable steps to inform themselves as to a fair value for Inland American shares, as more fully alleged above, as well by reason of any breaches of duty under investigation by the SEC as described in Paragraph 56, *supra*.

70.     As a direct and proximate result of Defendants' breaches of their fiduciary duty, Plaintiffs and the Class members have been injured in their property and have suffered and continue to suffer economic and non-economic losses, all in an amount to be determined according to proof at trial.

## COUNT II

### (Constructive Trust Against Defendant Inland American)

71.     Plaintiffs incorporate and reallege each of their previous allegations as though fully set forth herein. This cause of action is asserted against Defendant Inland American.

72.     Plaintiffs' funds were wrongfully taken by Defendant Inland American pursuant to Inland American's sales of Inland American shares to Plaintiffs and the Class at inflated prices pursuant to the DRP.

73.     Plaintiffs seek a constructive trust for those funds that they paid to Inland American over and above the true value of the Inland American shares sold to them pursuant to the DRP.

## COUNT III

### (Unjust Enrichment Against Defendant Inland American)

74.     Plaintiffs incorporate and re-allege each of their previous allegations as though fully set forth herein.  This cause of action is asserted against Defendant Inland American.

75.     At relevant times, Defendant Inland American received millions of dollars in funds from Plaintiffs and other Class members.

76.     There now exists a substantial controversy between Defendant Inland American on the one hand and Plaintiffs and the proposed Class on the other hand as to the ownership of monies in the possession of Defendant Inland American that lawfully belongs to Plaintiffs and members of the proposed Class, in an amount not yet ascertained and transferred at a time or times not presently known to Plaintiffs.

77.     By reason of the conduct alleged in the Complaint, Defendant Inland American has received a significant pecuniary benefit at the expense of Plaintiffs and members of the proposed Class and has been unjustly enriched.  As such, Inland American holds such assets in trust for the benefit of the Plaintiffs and members of the Class and has a lawful or equitable duty to return such funds to their proper owners.

78.     Defendant Inland American has failed to return to Plaintiffs and members of the proposed Class the money that lawfully belongs to them.  It is against equity and good conscience to permit Defendant Inland American to retain these monies that lawfully belongs to Plaintiffs and/or members of the proposed Class.

## JURY DEMAND

79.     Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

(a)     Ordering that this action proceed as a class action as to all claims previously alleged;

(b)     awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

(c)     declaring that Defendants' actions were a breach of fiduciary duty and unjustly enriched themselves and the Company;

(d)      awarding attorneys' fees and costs, and other relief;

(e)     imposing a constructive trust on the ill-gotten gains of Defendants in the ultimate res of which each Class member shall have an undivided interest, and disgorging any and all sums by which Defendants have been unjust enriched

(f)     ordering an accounting of Plaintiffs and the Class's assets;

(g)     directing further proceedings to determine the distribution of the trust among Class members, *inter se*, and awarding attorneys' fees and expenses to Plaintiffs' counsel; and

(h)     granting such other relief as to this Court may seem just and proper.

Dated:   April 26, 2013.           SALAS WANG LLC


s/Jeffrey M. Salas
Jeffrey M. Salas
John C. Wang
155 North Wacker Drive, Suite 4250
Chicago, IL 60606
Phone: (312) 803-4963
Fax: (312) 244-3151
jsalas@salaswang.com

LAW OFFICE OF
CHRISTOPHER J. GRAY, P.C.
Christopher J. Gray
360 Lexington Avenue, 14th Floor
New York, New York 10017
Phone:  (212) 838-3221
Fax:  (212) 937-3139
chris@investorlawyers.net

*Attorneys for Plaintiffs*